UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Maurice MCPHATTER | Crim. No. 18-578 (KM)<br><br>OPINION & ORDER |

**MCNULTY, District Judge**

The defendant, Maurice McPhatter, is serving a 10-year sentence for drug trafficking. He moved for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), citing the COVID-19 pandemic and the resulting danger to himself while incarcerated, given his other medical conditions. (DE 190, supplemented at DE 209) After review of the medical records and the submissions of the parties, I denied relief, finding that the facts did not meet the necessary threshold of "extraordinary and compelling" circumstances. (*See* Opinion "Op." dated March 28, 2022 (DE 217, corrected at DE 218).) In particular, I reasoned that Mr. McPhatter had no medical condition that exposed him to particularly severe consequences from COVID if he remained incarcerated, that he had received a COVID vaccination and booster, that current infection rates were very low at his institution, and that the 18 U.S.C. § 3553(a) factors weigh against release.

My decision noted that Mr. McPhatter has only one kidney, a congenital condition, and currently has a kidney stone, for which he has refused surgical treatment. While "chronic kidney disease" is a COVID risk factor, I noted that the prison medical records did not support that diagnosis:

> A measure of kidney function is the eGFR (i.e., glomerular filtration rate). Prison medical records as of March 2021 report a raw eGFR of 57, with a note to multiply by 1.210 if the subject is African-American, which Mr. McPhatter is. That would yield a calculated eGFR score of 68.97. The

>same note states that a "calculated GFR <60 suggests a chronic kidney disease if found over a 3 month period." (G050).

(Op. at 6 n.4) In short, Mr. McPhatter's is a borderline case; if the multiplier for African-American patients is applied, he is above the eGFR of 60; if not, he is below.

The 1.210 multiplier applied by the prison medical authorities is well established for purposes of diagnosis and treatment. A useful recent New York Times article, however, notes that there is a shifting medical consensus as to the appropriateness of the multiplier.[1] That article, published a month after I entered my decision, reported that an action was just filed in the U.S. District Court for the District of Columbia challenging the use of that multiplier by the BOP. A BOP spokesperson reportedly issued a statement to the effect that BOP is in the process of transitioning away from use of the multiplier in the next few months. *Id.*

None of this was before me when I rendered my decision. I do not say that the BOP medical authorities erred at the time when they applied what is a well-established standard. But particularly if abandonment of the multiplier is in the offing, it is only fair that the parties should be permitted to address it.

Now a finding of a chronic kidney condition would not necessarily entitle this defendant to release. My decision was based on a number of considerations, most of which are unaffected. Unfortunately, Mr. McPhatter's kidney condition preceded his incarceration and will likely follow him through life. The question is whether, under conditions of incarceration as opposed to in the community at large, he faces an unacceptably increased risk of COVID infection and serious consequences therefrom, given his medical condition and the treatment facilities available in the prison system. And even if so, I must

---

[1] *See* https://www.nytimes.com/2022/04/22/nyregion/prison-kidney-federal-courts-race.html?searchResultPosition=1. To be clear, this Court considers the multiplier only as it may affect petitions for compassionate release. The abandonment of the multiplier for diagnosis and treatment is a separate and complex medical issue *See id.* (noting advantages and disadvantages of a higher calculated eGFR score).

consider whether an order of release would undermine the goals of criminal sentencing set forth in 18 U.S.C. § 3553.

That said, the issue of the eGFR multiplier for African-American patients is potentially pertinent. I will therefore consider it.

## ORDER

IT IS THEREFORE, this 28th day of April, 2022,

ORDERED as follows:

1. Within 21 days, the parties may file supplemental briefs, not to exceed 15 pages exclusive of exhibits, concerning the effect, if any, of the eGFR multiplier for African-American patients on the Court's prior decision denying compassionate release.
2. The government shall update the defendant's medical records and supply the court and defense counsel with a copy. The briefing may address any relevant changes to the defendant's medical history.
3. The court will appoint counsel to assist the defendant in his presentation.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**