UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    v.<br><br>Maurice **MCPHATTER** | Crim. No. 18-578 (KM)<br><br>**OPINION & ORDER**<br>**(2d compassionate release application)** |

**MCNULTY, District Judge**

The defendant, Maurice McPhatter, is serving a 10-year sentence for drug trafficking. He now has filed an "Emergency Renewal" of his prior motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), citing the COVID-19 pandemic and the danger to himself while incarcerated. (DE 230) I have already written two opinions denying Mr. McPhatter's prior application for compassionate release. ("Op. 1", DE 217; "Op. 2", DE 228) This opinion must be read in the context of those two prior opinions, which are incorporated herein by reference.

Generally speaking, the danger from the COVID-19 pandemic has abated since Mr. McPhatter filed his first compassionate release application. As of Monday, April 10, 2023, President Biden signed into law H.J. Resolution 7, which terminates the national emergency related to the COVID-19 pandemic. Any emergent application, then, sails into a headwind.

**A. Prior Decisions and this Application**

On March 23, 2022, I filed my first opinion denying Mr. McPhatter's motion for compassionate release. (Op.1) After review of the medical records and the submissions of the parties, I denied relief, finding that the facts did not meet the necessary threshold of "extraordinary and compelling" circumstances. In particular, I reasoned that Mr. McPhatter had no medical condition that

1

exposed him to particularly severe consequences from COVID if he remained incarcerated, that he had received a COVID vaccination and booster, that current infection rates were very low at his institution, and that the 18 U.S.C. § 3553(a) factors weighed against release. In doing so, I accepted uncontested medical evidence that a raw eGFR (glomerular filtration rate) score of 57, once a multiplier of 1.210 for an African-American subject is applied, would not indicate serious, chronic kidney disease.

 Thereafter, it came to my attention that medical opinion was shifting as to the appropriateness of using that multiplier. I therefore *sua sponte* reopened the matter, appointed counsel for Mr. McPhatter, and directed the parties to file updated medical records and further submissions. They did so. In a second opinion filed on June 7, 2022, explicitly deemed a supplement to the first, the Court again denied relief. (Op. 2)

 In that supplemental opinion, I found that, as of April 6, 2022, Mr. McPhatter had now received a positive diagnosis of chronic kidney disease ("CKD") at level 3a, which corresponds to "mild to moderate loss of kidney function." The significance of that diagnosis, however, is intensified by the fact that Mr. McPhatter has always had only one functioning kidney. I found that he had been receiving regular and appropriate medical care. I also noted the presence of hypertension, contemporaneously measured at 146/89. While these conditions may increase the risk of severe consequences from a COVID-19 infection, I (a) cited ample case law rejecting similar conditions as a basis for compassionate release; (b) noted that COVID vaccination rates at FCI Texarkana were high, and that Mr. McPhatter himself had been vaccinated; and (c) observed that there were currently zero infections among staff and inmates at FCI Texarkana. As before, I concluded that the balance of factors under 18 U.S.C. § 3553(a) would not weigh in favor of release. (Op. 2, *passim*.)

 On May 9, 2023, Mr. McPhatter filed the current "Emergency Renewal" of his motion for compassionate release ("Def. Brf.", DE 230), as well as a motion for appointment of counsel (DE 231). The motion, like its predecessors, cites the risks of COVID-19 transmission in an institutional setting. In addition to

previously recognized medical conditions, he cites others, discussed herein. The government has filed a brief in opposition ("Gov't Brf.", DE 232), attaching updated medical records (DE 232-1).[1]

### B. Analysis: Compassionate Release

As before, I emphasize what is sometimes obscured in First Step Act applications: A federal prisoner may suffer from ailments that would plague a person whether in or out of prison. Mr. McPhatter suffers from certain medical conditions, which I do not discount, but release from imprisonment would neither cure nor alleviate them. One must ask whether there is something about *incarceration* that so *increases* the risk to the prisoner as to set forth extraordinary and compelling circumstances justifying his release.

I therefore consider the effect of the supplemental submissions and updated information on my prior analysis of (1) the risk, for someone with Mr. McPhatter's medical conditions, that a COVID-19 infection would carry serious consequences; (2) the effect of vaccination on the likelihood of Mr. McPhatter's contracting a serious COVID-19 infection; (3) COVID-19 infection rates at FCI Fort Dix, where he is now incarcerated; and (4) the balance of § 3553(a) factors. As to those issues, I update and supplement my prior analysis as follows:

1. *Updated medical condition*

As before, I look to the CDC's list of conditions that place a person at greater risk of hospitalization or other serious consequences from a COVID-19

---

[1]   The CARES Act has its own specialized exhaustion requirement. The power to file a compassionate release motion under section 3582(c)(1)(A) is lodged in the first instance with the Bureau of Prisons. Only after the BOP has denied the defendant's application, or after 30 days have elapsed without a decision by the BOP, can the defendant file a motion in court. See 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) (denying remand of appeal seeking compassionate release as futile in light of lack of exhaustion).

While there is no supporting documentation, Mr. McPhatter states that he filed a request for compassionate release with the Warden of Fort Dix on January 8, 2023. (Def. Brf. 2) More than 30 days passed without a decision before he filed his motion here. The government does not press the point, instead addressing the merits.

infection. People With Certain Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 11, 2023) (herein, "CDC List").

Chronic kidney disease. I thoroughly discussed Mr. McPhatter's kidney ailment in my earlier supplemental opinion. (Op. 2) There, I accepted the diagnosis of CKD 3a, and a measured eGFR reading of 57. This condition has received proper medical treatment. As of September 21, 2022, January 24, 2023, and April 11, 2023, McPhatter's eGFR was consistently reported as >60. (DE 132-1 at 35, 59, 72) The CKD has not worsened and, if anything, has improved slightly since my prior decision.

Arthritis.  Mr. McPhatter reports lumbar-lower back arthritis, for which he has been prescribed an anti-inflammatory. The CDC have not listed this as a condition that places a person at greater risk of serious consequences from COVID-19. *United States v. Canzater*, No. CR 18-578 (KM), 2022 WL 1602163, at *4 (D.N.J. May 20, 2022) (defendant at no greater risk from osteoarthritis in prison than he would be out of prison).

Elevated cortisol levels/PTSD. Mr. McPhatter diagnoses himself as suffering from post-traumatic stress, and opines that the resulting elevated cortisol levels place him in danger of serious consequences from a COVID-19 infection. The medical records do not support any such diagnosis (*see, e.g.,* DE 132-1 at 9 (mental health screening)), which in any event would not be extraordinary and compelling.  *See generally United States v. Fountain*, No. 21-1313, 2021 WL 4772957, at *1-2 (3d Cir. Oct. 13, 2021) (affirming District Court decision to deny motion for compassionate release based on conditions including anxiety, panic attacks, PTSD).

Migraine headaches. This, again, is a self-diagnosis. The medical records contain no evidence of migraines. Mr. McPhatter has frequently reported to prison medical personnel that he does *not* suffer from headaches. (DE 132-1 at 008, 013, 017, 018, -59, 063)

Hypertension. In my prior opinion, I noted blood pressure readings ranging from 122/82 to a high of 146/89. This condition has not worsened,

4

nor has it approached its former peak. Blood pressure readings in the updated medical records range from 129/82 to 134/88. (DE 132-1 at 001, 005, 052, 055). The medical records confirm that hypertension is being monitored and medicated appropriately. (*E.g.,* DE 132-1 at 5)

Moderately enlarged prostate. (DE 132-1 at 6) No particular severity is indicated. PSA testing has been ordered.

### 2. *Vaccination status*

In the prior opinions, I cited medical records which documented that Mr. McPhatter had been fully vaccinated and boosted. Current medical records confirm this. (DE 232-1 at 17–18, 59, 63)[2]

The government cites the most recent available figures regarding vaccination rates at Fort Dix. Some 3372 inmates (approximately 89%, not accounting for turnover) and 277 staff members had been vaccinated. (DE 232 at 7) As was the case at FCI Texarkana, this resulting herd immunity tended to reduce Mr. McPhatter's risk of infection.

### 3. *Infection rates at Fort Dix*

At the time of his prior application, Mr. McPhatter was incarcerated at FCI Texarkana, where there were no current cases of COVID-19. He is now at FCI Fort Dix, where that is also true. The most recent available mid-May figures for Fort Dix state that, among the 3789 inmates, there were currently 0 positive staff cases and 0 positive inmate cases of COVID-19. (Gov't Brf. (DE

---

[2] As noted in my prior opinions, vaccination, if not always dispositive, is a highly relevant factor. *See generally United States v. Thomas*, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (affirming denial of compassionate release based in part on vaccination, and approvingly citing cases denying compassionate release on basis of refusal to be vaccinated)*; United States v. Jaquwin Marlin,* No. CR 19-168 (SDW), 2021 WL 5711587, at *2 (D.N.J. Dec. 2, 2021) (declining to find extraordinary circumstances where defendant, although at higher risk as a result of obesity, had been vaccinated); *United States v. Dennison,* Crim. No. 09-402 (NLH), 2021 WL 5630296, at *2 (D.N.J. Dec. 1, 2021) (declining to find extraordinary circumstances where defendant had returned positive result for COVID infection and subsequently been vaccinated).

232) at 7 (citing https://www.bop.gov/coronavirus/covid19_statistics.html (visited May 16, 2023)).³

   4. *§ 3553(a) factors*

For the reasons set forth above, the new material in the renewed motion does not suffice to set forth a showing of extraordinary and compelling circumstances. I have nevertheless reviewed the § 3553(a) factors, which, even as now supplemented, do not warrant release.

Most factors remain as before. (*See* Op. 1 at 10–11, Op. 2 at 8–9) The offense involved participation in a drug trafficking organization, and personal distribution of some 100 grams of heroin in a two-week period, exposing him to a mandatory minimum sentence of ten years, which was in fact the sentence imposed. He has multiple prior convictions, primarily involving drugs and weapons.

Mr. McPhatter's new motion adds that (a) he has a low recidivism rating from BOP and (b) he has now served over 70% of his sentence. I note also certain positive features in his background, as well as great strides toward defeating his drug habit. These factors, in my view, do not tip the balance. Release at this time would undermine the goals of sentencing, particularly those of punishment and deterrence of others. I adhere to my prior conclusions as to the § 3553 factors.

*             *             *

The statistical likelihood of this vaccinated individual contracting a COVID-19 infection seems to be no greater inside FCI Fort Dix than it would be outside. The medical conditions that would exacerbate such an infection are being properly addressed, and there is no showing that they would be

---

³   Mr. McPhatter cites a history of positive cases at Fort Dix. The Court is well aware that this facility has seen many hundreds of positive test results over the three-year course of the pandemic, and two deaths, the later of the two in March 2021. *See United States v. Peeples*, No. CR 16-463 (KM), 2022 WL 10004955, at *9 (D.N.J. Oct. 17, 2022). Even as of that date, however, the risk had abated, and there was no showing of greater danger inside the institution than outside. Thus the history is not fairly indicative of the risk going forward.

6

alleviated by release from prison. Finally, the § 3553(a) factors do not weigh in favor of release. The motion for compassionate release is therefore denied.[4]

**C.  Appointment of Counsel**

Finally, the separate motion for appointment of counsel (DE 231) is denied. There is no right to counsel in these proceedings. Mr. McPhatter had the benefit of the Court's *sua sponte* appointment of counsel in connection with his prior application. The supplemented and updated issues on the current application do not pose complex or meritorious issues justifying a further appointment.

## ORDER

**IT IS THEREFORE**, this 18th day of May, 2023,

**ORDERED** that the renewed motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (DE 230), is **DENIED**; and it is further

**ORDERED** that the motion for appointment of counsel (DE 231) is **DENIED**.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

---

[4]   To the extent that Mr. McPhatter may be arguing in the alternative for transfer to home confinement, the application must be denied. The Court has no authority to grant such relief, which is reserved to the BOP under 18 U.S.C. § 3624(c)(2). *See United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *Aigebkaen v. Warden*, No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020) ("Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion."). And if the court did possess the discretion to award such relief, it would not do so, for the reasons expressed above.